Good morning. I believe I reserved five for rebuttal. Thank you. Good morning, Your Honors. Just so you know, the clock shows your total time. Great. Thank you. Good morning, Your Honors, and may it please the Court. My name is Charles Wray. I'm here on behalf of the plaintiffs in this case, Hubbard, and the other collective class members. The three major issues that are presented to you here on this case are, one, to do a building block sort of approach on this is, one, did the district court err in making a decision that there was no showing of willfulness or no question of fact of whether or not the actions taken by the county in this case were willful, and whether or not that should continue to be decided by a jury. The second issue here is whether or not the— Just interrupt for a minute. If not, don't you lose on everything else? I'm sorry. Don't you lend—if not, if he didn't err in that regard, isn't that basically the end of the case? It is. Yes, it would be because of the statutory issue that's there. However, if there is a finding of willfulness, it does extend that statute from two to three years. Right. Okay. But otherwise, you didn't make the two years and you don't have any argument about— We don't get to the next phase of those arguments. I would absolutely agree with that. And so the statute is clear that if there is a finding of willfulness, that it is extended from two to three years. And that's what we've been arguing from the inception of this case, that this was a willful failure to pay the overtime. And the district court's decision on the papers to say that it was not willful was—it was—it was error, because it's a question of fact, not a question of law. We're not here to define what an offer is. We're here to submit this to a fact finder and say, okay, when the county met with the union prior to beginning the COVID classes and had requirements of it, if there's a change in overtime pay or any type of change regarding wages, and they did— And what's the relevance of that to the Fair Labor Standards Act case? I mean, it might be a breach of, you know, the California collective bargaining laws, but what does it have to do with the Fair Labor Standards Act question? Because it's showing that their decision to not pay was willful. Well, it was certainly—I mean, they definitely made the decision, if it's willful in that way, but whether it was willful in the sense that they knew that they were violating the Fair Labor Standards Act, what does the bargaining have to do with that? I was absolutely baffled by the connection. Sure. And in the MOU, there is a section that specifically cites the FLSA and says that where this is silent, where the MOU is silent, you yield to the FLSA. And FLSA says at 201 that you're supposed to pay for overtime for wages earned or earned. So, I mean, I'm having perhaps the same issue that Judge Berzon is having. I absolutely understand your argument that they willfully violated the CBA, but I don't understand how that relates to a possible willful violation of the FLSA. Are you saying that any willful violation of the CBA is automatically a willful violation of the FLSA? I would not make that wide-ranging of a position. We're saying in this specific instance here, the county knew what the guidelines were, and the FLSA does control in certain respects regarding overtime. The MOU says over 40 hours, you're supposed to get certain overtimes and things of that nature. It's appellate's position that the evidence of the meeting shows that this was a willful failure to pay because 201 still applies. The MOU makes that clear. And so if we're willfully violating the FLSA per the MOU, we're still in the same position talking about the same issue. That's where those two points converge in our position in our mind. I understand that you're looking for at a starting point from the MOU to say, okay, now we're moving to the FLSA. I can understand that there's a step that's involved in that process, but it's a distinction without difference when the MOU says that the FLSA applies. Okay, and if the FLSA applies, then the question in this case is how does it apply, but what does that have to do with whether there was a willful violation or not a willful violation? In other words, if you had evidence that they had said to the union, you know, we're really not allowed to do this because the FLSA would require us to actually pay for the time in the hotel. But if you agree to it, we'll go ahead and not pay for the time in the hotel. But there's no evidence like that. So we're getting a little out over our skis in that respect because the issue here is whether or not the issue of willfulness should be submitted to a jury, to a fact finder. But you need a fact. What's the fact? The fact that it was willful was that they went and met with the union. They discussed the management folks, but not the recruits. And based upon the lack of discussion regarding the recruits, they walked away saying we don't have to pay them. We have an implied understanding. Understand the implications of that. Well, even if they had an actual understanding, why would that matter unless the understanding was based on a recognition that they were violating the FLSA? The recognition is, is that no matter what, they're supposed to pay for overtime that comes from a marriage of the FLSA, which and the MOU. Counsel, the problem that you're they you have to show that they knew that not paying for the time spent in the hotel as overtime pay violated the law, that they knew that and they willfully disregarded that legal conclusion. And that, yes, choosing not to pay. Yes, they definitely chose not to pay overtime for that time. They what evidence you have specifically that they knew the time spent in the hotel, not paying overtime for that time, violated the law. By specifically trying to trying to obtain an agreement or an understanding that they would not pay for that time. Isn't isn't that I mean, this is a little far afield, but isn't that what management is supposed to do to talk to labor and try to find out what their understanding is? Again, as Judge Berzon is saying, you know, if if they'd sat down with the union and said, we know we can't do this under the FLSA, but here, why don't you help us violate the law and maybe we'll give you something else. But but isn't normally consulting with the union on something like this a good thing? Absolutely. And we're not I'm not a bargain for more than what the law requires. Right. So if they are in negotiations with the unions, I mean, we know that the FLSA doesn't require overtime for these hours, but we want to bargain for more. They that was an option. Right. So they had to reach an agreement with the union about what would happen under these circumstances that could go far beyond what the FLSA minimally requires. The FLSA in and of itself are seven eighty five point two three, which allows reasonable agreements between parties that are not in violation of the law. And I think that I think that bootstraps more or less the position that you're taking. So just reaching an agreement with the union be like we can go above and beyond the law or we can go to what the law requires. It doesn't necessarily imply that they were agreeing to violate the law. Correct. When I would say I don't think you're ever going to get a defendant, especially the county, say that we're agreeing to violate the law. So we're never going to have an agreement for that. So but what I'm saying here is that because they secured an implied agreement without even discussing the recruits, they knowingly believed that there was an issue of overtime pay. They did not discuss recruits, just said we're going to do what we want to do. That in essence of itself is the evidence of them knowing that they are saying the problem is not that they agreed, but that they didn't agree. They did not agree. There's and here's the important distinction here is think about the implications of what the county has presented as how this went down. They talked about the management structure and then being paid overtime. They never discussed the recruits ever. And the county said because they failed to discuss the recruits during that meeting regarding overtime, they had an agreement with the union that they were exempt from overtime. That's an insane connection to make. But it wasn't that they were exempt from overtime. The district court here or a district court in another case found that there's a unusual and specific regulation here regarding firefighters and training and so on.  And so the question was whether the fact that they had to stay in the hotel was within or outside of it. The answer is not transparent. It's not. And so if it's not transparent, then how could they have willfully violated it? And especially when the district court ultimately found that they didn't violate it at all. The district court's finding they didn't violate it was based upon the meeting. And the meeting in the meeting itself shows that there that the county was finding was based on the meeting and not on the fact that there was an actual his understanding of what this FLSA requires. The meeting with the union and the implied understanding and the consult, I believe the district court actually used the word consult, the consulting between the county and the union is what made this not willful in the eyes of the court. That's my understanding of how of how that I thought he found in the other case they found that it was actually legal, not not willful. I'm not I'm not saying that these agreements are unenforceable. That's not the argument here. The argument here is whether or not this was a valid agreement, whether or not this was willful because there was no agreement. They didn't even just again, they did never discuss the recruits and it came walked away with implied understanding. If it's what they did was legal under the was valid under the FLSA, then it can't be willful. I completely disagree with that analysis. How could it be willful if it's it has to be a willful violation first, it has to be a violation. Because you have the FLSA, which establishes overtime pay. We can start there. Then you can have a reasonable agreement to exclude certain time. We're saying there was never any agreement. So are you are you saying that the prior panel is just wrong? If we want to go there, sure. OK, so so it's in your view, it's obvious that this is a violation, but the other panel unpublished decision just didn't see it. We never we never got to this specific issue because the implied understanding, by the way, did not come out in that case until discovery in the instant case, although I took the other panelists talking about what the meaning of 785 23, I'm assuming, is there the reasonable agreement? Well, I'm I'm also looking at the discussion of the CFR, right? And so the facts in this case, the implied understanding here, the fact that the county tried to secure an agreement in place saying we are not going to pay you for certain overtime. We think is indicative and evidence is that this was willful because they they secured an agreement that was in no way enforce enforceable. That's what did you want to reserve the rest of your time? I have a few short, a few short minutes. I just want to know. That's fine. You can address your time the way you want. Yeah, no, I thank you. Thank you for that. Moving to the next point, and this is whether or not the application of the relation back should apply to FSA cases, specifically ones that fall under the 216 notice requirement. We believe that the guy, the case of a guy that we've fully briefed on this issue, makes it very clear that the relation back that mirrors Rule 23 should also apply in these cases for the obvious reason of the utility of what it provides. If we're going to say that someone doesn't enter a case, their entry point is not until their written consent form is submitted, then we have a timing issue here that doesn't that's not covered that Rule 23 explicitly covers and should apply in the 216 type of cases, which is these FLSA cases. So it's not a very complex, it's a change in law, and we think that the law should be updated on that point. And finally, I'll just add, reserving my remaining time, is that the third point is whether or not when the court looked at the underlying case, the Hunt case that's been discussed and that was up on appeal, when the court took the decision from Hunt, which was not raised on MSJ, and then applied it in this case, it never gave the appellant an appropriate time to show the distinction between the facts of that case and the instant case. And so with that, I'll reserve my remaining time. All right. Thank you. Thank you. Good morning, Your Honor. May it please the Court. Elizabeth Arce on behalf of the County of Los Angeles, the appellee. I'd first like to address counsel's argument regarding the issue of willfulness. First of all, I'd like to point out that counsel indicated that willfulness is a question of fact that should have been decided by a jury instead of the district court. I'd like to remind counsel, or Your Honors, of its decision in 2022, Ray versus the Los Angeles County of Public Social Services, where it found that a court can decide the issue of willfulness on summary judgment where there were no issues of material fact, and that was the case here. We submit that the district court properly decided that the county did not act willfully under the FOSA, and I think the issue here, the weakness in the appellant's argument is exactly what Your Honors' questions have revealed, that it seems to be that there's a fundamental misunderstanding between the obligations that are provided for under the FLSA versus what's provided for under a collective bargaining agreement. In this instance, it's a memorandum of understanding. You know, appellant seems to conflate the two concepts together, and as the court is aware, the FLSA sets the minimum statutory requirements that an employer is supposed to follow for purposes of compensating employees. A memorandum of understanding or collective bargaining agreement can negotiate for greater benefits than that. So you can have a situation where you can be legally compliant with the FLSA by not compensating employees for firefighter trainees for the time spent in the hotel outside of training, but then potentially violate the collective bargaining agreement if there are provisions in the collective bargaining agreement that have been interpreted to compensate for that type of situation. In this instance, all the collective bargaining agreement seems to say is comply with the FLSA. So, the collective bargaining agreement, so this is another issue that I'd like the court to focus on as well, is that the counsel's arguments in terms of what the collective bargaining agreement provides for are simply his interpretations. There's been no evidence admissible from any county personnel indicating what the provisions of the collective bargaining agreement provide for. The collective bargaining agreement does in places say that we are to comply with the FLSA, but there's also language that opposing counsel cites to in his briefing, which he says to support his argument that overtime should have been paid, is he cites your provision that says, no agreement, alteration, understanding, variation, waiver, or modification of any terms of these provisions contained herein shall in any manner be binding upon the parties hereto unless made and executed in writing by the parties, and if required, approved and implemented by the county's board of supervisors. All the plaintiff cites to is a provision that generally says that firefighters would be entitled to overtime. The MOU, the collective bargaining agreement, does not define what types of activities would constitute overtime pay for purposes of the MOU, nor does it define any sort of, nor does it define what the compensability of time spent training in an overnight situation would be. The MOU is silent. Let's change the subject a little. I mean, it seems to me that the wilfulness issue here is not difficult, particularly because we have a, albeit unpublished opinion, saying that it wasn't even a violation, so how could it be willful? The one piece of this that we probably won't reach, but which I am somewhat interested in, is the question of whether there isn't or shouldn't be some tolling available if, for example, it was willful. Based, I understand that the Sixth Circuit has a higher standard with regard to the threshold, but even so, I mean, as I understand this system, if the complaint was filed on the last day that it was of the limitations period, then, and if the time to run, to the accrual date is the consent time, it's never going to be timely, unless there's tolling, particularly because anybody other than the class, than the original plaintiffs, aren't even going to know there's a case in time. Well, under your Honor's hypothetical, if a plaintiff were to file on the very last day. Or, it doesn't have to be the last day, that just exacerbates it, but it could be a month before, or two months before, by the time they get the notices out and anybody gets them and so on, almost surely the time has run. So your Honor, I would focus your attention on 29 U.S.C. 256. I know it says that, I know it says that, but that leads to the question, but there were two judges in the Sixth Circuit and a district court that said that under their circumstances, there should be tolling, and I'm wondering why this is different, even though we don't have as high standards for preliminary notice, we still have some standards for notice, and it still takes some time, and people are still going to be out of luck who didn't know there was a case. Well, your Honor, I think the difference there between the Guy case, which is an unpublished Michigan district court case. But it's not only a district court, there were two dissents in the Sixth Circuit. Correct. So the Sixth Circuit and the Clark case. So the difference that we see there is that the Sixth Circuit has adopted basically a one-step process. I understand that. I understand that. But they said under those circumstances, there could be tolling. I'm saying, even without a higher standard, there's still a standard, and it still takes time, and the time is still going to run before anybody knows there's a case. Well, I do think it does make a difference, your Honor, between having a one-step versus a two-step process. This Ninth Circuit has adopted the two-step process in Campbell v. City of Los Angeles, and I believe they recently reaffirmed the two-step process in a case, I think it's called the Canfield. Okay, but it's still, the first step still takes some time, and the time could run before anybody is informed that there's a case. I understand your point, your Honor, but the ones, because of the two-step process and that the first step is a more lenient standard that, for the most part, can be decided by at least district courts within the Ninth Circuit, based upon the pleadings and maybe some declarations, that it does— But the time is more than zero and probably more than a month or two. That is correct, your Honor, but, you know, practitioners that have operated in this area have moved, typically moved expeditiously to try to seek conditional certification at that first step. Going back to the Hunt case, which was the first case before this one, the court actually set a 60-day deadline for the plaintiff, Brian Hunt, to seek conditional certification of the case as a collective action. Mr. Hunt did not satisfy that deadline, which resulted in Mr. Hubbard filing this incident lawsuit. So, your Honor, you know, whether it's the court, you know, district court that provides a deadline close in time after the filing of initial complaint, or in many situations it is the expedience of the counsel that has moved right away to seek collective action of conditional certification, that there is no prejudice there. I understand in this situation that appellant waited several months until after the lawsuit was filed before seeking conditional certification, but what I'm advocating for is that the county should not be jeopardized by that strategic decision to delay seeking conditional certification of that motion. He had the freedom and the ability to do so shortly after the complaint was filed, and especially one would think, given the urgency of the fact that Mr. Hunt missed the deadline to seek conditional certification, that they would have moved more expeditiously in the Hubbard case. Is there a case that actually says a district court does not have discretion to grant equitable tolling between the time of filing the complaint and the opt-ins? I'm not aware of a case saying that it doesn't have discretion. I think based upon the case law, the court does have the discretion to apply equitable tolling because there are two factors that would support equitable tolling. The first factor would be, you know, were there extraordinary grounds that existed beyond appellant control that made it impossible for the appellant to file a claim on time, or that the county engaged in some sort of wrongful conduct that prevented the appellant from asserting that claim. It seems that in this case, so the appellant has asked for equitable tolling. This is now the third time. The first time he asked for equitable tolling... I understand there's two different equitable tolling issues here. There's one based on alleged wrongful conduct, but then there would... I'm asking specifically about the period of time between the filing of the complaint and opt-ins. Is there any precedent or rule that you can point to that says a district court cannot grant equitable tolling from the time the police action complaint is filed to allow essentially time for the first step in the process for people to opt-in? I'm not aware of a case that addresses that issue in this specific context in determining... So it's an equitable tolling, assume there's some discretion here on the part of the district court just to grant equitable tolling on that basis. We don't necessarily have to address a categorical rule in this situation, because even if the plaintiff would also have to show a three-year statute of limitations, is that correct? To even make it matter, essentially? Correct. And I think that's the fundamental issue as well, is that... And I think appellant has conceded that the two and three-year statute of limitations has expired, and he would only be able to avail himself of the three-year statute of limitations if equitable tolling were to apply. And he can't avail himself of the two-year statute of limitations, no matter what. Correct, no matter what, right, exactly. And just if I can just put a finer point on your question, Your Honor. So I'm not aware, you know, now that you've clarified your question, the equitable tolling cases that I think both sides have relied upon are kind of just in a general context of whether equitable tolling applies, because I do not believe there is a case that specifically addresses equitable tolling in this particular situation. However, I am going to revise my statement a little bit to say I am kind of cautious to say whether discretion is involved, given what 29 U.S.C. 256 says. I mean, it provides pretty explicit guidelines in terms of when a statute of limitation, you know, when it applies in this type of situation. I understand, but we didn't, if we agree with you on willfulness, we don't have to reach that question. Correct, Your Honor, correct. If there are any other questions? No, thank you, Counsel. Thank you. So I briefly have a few points to just add on the willfulness issue, which took the lion's share of the time during my first remarks. I want to revise one part of the statements here about the previous panel getting it wrong. And so in that issue there, that case, the Hunt case, was decided on an individual basis. And it was decided upon a finding that 785.23, which was an agreement based upon Hunt looking at his paycheck and showing up to work the next day that there was this agreement he was not supposed to be paid overtime during a portion of the hotel stay. Those facts in that case differ from the facts in the instant case. Because the county in that case defended that case saying that the 785 agreement and that part of the CFR applies. Here they're saying there's an implied agreement that was made between the union and the county prior to beginning. This is a dramatically different set of facts that we have here. And so based upon that, I would like to revise my statement saying that the previous panel got it wrong. I misspoke on that and I apologize. Moving to the willfulness issue again, the fact that they had to secure an agreement that the MOU, where the MOU sets the standard that we are to comply with the FLSA, and even when you secure an agreement that says we are going to exempt you from certain overtime at a certain time and place, that is a modification that is showing that we are deviating from the FLSA, which says if you're working, you've got to be paid. And they were exempting time. I understand the overlap and acknowledge the overlap of an MOU affecting the FLSA. But the whole question in this case is whether they were working. That's the issue. And to that point, that's not up on appeal right here, but there has evidence that has come out during discovery that they asked, and in fact wanted, our clients to be physically and mentally available at all times. They actually said that. It was cheaper shares. First time we actually had some evidence to show that they burdened them with that task while at the hotel. Burden goes into whether or not someone is working. There's a whole other use of issues that are not up for appeal at this stage right now. I think if the case gets kicked back, we'll be right back here talking about it again, but that's where the case stands right now as far as the appealable issues before this panel. All right. We thank counsel for their arguments. The case just argued is submitted. And with that, we are in recess for 10 minutes. All rise. This court stands on recess for 10 minutes. All right.
judges: BERZON, BENNETT, SUNG